## Clarke, Controller v. Meehan, Sheriff

*J. S. Clark, Jr.*, for plaintiff.

*W. B. Farran*, for defendant.

GORDON, JR., P. J., December 15, 1950.—This action in mandamus is brought by the Controller of the City and County of Philadelphia against the sheriff to compel the latter to submit to the controller's examination and audit all of defendant's books, records and accounts of moneys received from all sources by him during the year 1949, in his official capacity as sheriff, and the case is before us on a motion by plaintiff for judgment on the pleadings. The situation as disclosed by the pleadings is simple, and raises the question whether the sheriff can properly decline to submit to the controller's audit official records which the sheriff contends, on the sole basis of his own assertion, relate exclusively to money in the ultimate disposition of which he claims the city has no interest. He does not claim that the moneys in question belong to him personally, or deny that he received them in his official capacity as sheriff.

The precise question presented by the pleadings appears never to have come before our courts for judicial decision. Neither our own search of the authorities, nor the diligence of counsel has discovered any direct precedent upon the subject. All of the reported cases deal, in one form or another, with attempts to hold a public officer to account for specific moneys which investigation has already disclosed he had received. None involve the preliminary right of a controller, or other auditing authority, to investigate an official's records for the purpose of determining their correctness and accuracy, and of discovering any errors or mistakes that may possibly exist in his accounts. This latter question is entirely different from that of the liability

of an officer to pay into the public treasury moneys which it has been ascertained he has actually received. The absence of direct authority upon the point before us, therefore, makes the present case one of first impression, the decision of which must rest upon reason and fundamental legal principles.

It appears that in February and March 1950 the controller, in making his usual annual audit of the sheriff's financial books and records, requested access to all the financial records of the sheriff's office. Defendant, however, permitted an examination only of such records as related to fees and charges which he acknowledged he was required by law to pay into the city treasury, but refused to open to the controller's inspection those records which he asserts contain only the accounts of moneys received from persons dealing with him officially and in which he alleges the city has no interest as the ultimate recipient of them. The extent of these latter records, their accuracy and the exact nature of what they contain, can be determined only by a thorough and complete examination and audit. Although it may not be probable, it is entirely possible that the sheriff's records have been inaccurately kept and contain erroneous entries of money to which the city may properly lay claim, or even entries showing fees and charges which a sheriff is not entitled by law to make. Whether any or all of the receipts recorded in the withheld books belong, on the one hand, to those from whom he received them, or, on the other, are properly payable to the county treasury, are questions which can only be answered by a complete inspection of the records themselves; and this can and should be done, initially, by the duly elected public auditor of his official accounts. Mandamus is not an appropriate proceeding to adjudicate such questions, for this high prerogative writ lies only to enforce the ministerial duty of a public officer—in this case, to open his ac-

counts and records to the controller's inspection. To determine which, if any, of the multitudinous entries in the withheld accounts the controller may see, and which he may not, would require us to make as complete and thorough an audit of the accounts as the controller himself would make, and would in effect transfer to us the performance of a function peculiarly belonging to the controller. Hence, the only issue which defendant attempts to raise by his answer to the complaint, namely, whether the voluminous official records which he denies to the controller contain anything in which the latter has a legitimate interest, is manifestly immaterial to the real issue before us. That question will only arise if, and when, the audit of the books discloses errors justifying further official action by the controller to surcharge the sheriff in the appropriate proceedings prescribed by law for that purpose.*

Though the sheriff's assertion that the books in question contain no such errors or irregularities may be correct, that assertion alone is not sufficient to deny the controller his right, in the first instance, by inspecting all of the sheriff's financial records to ascertain whether they are adequately and properly kept, whether they show items of receipts to which the city may be

---

* Act of May 2, 1929, P. L. 1278, secs. 341, 345 and 379. See also Lackawanna County's Appeals, in which a county treasurer "concealed" by failing to report inter alia certain fees received by him which he claimed he was lawfully entitled to retain by custom and common knowledge; and in commenting upon the treasurer's failure to report them, Mr. Justice Simpson, speaking for the Supreme Court said (296 Pa. 271, 278):

"Here, the treasurer admitted that none of these items appeared in his returns to the controller, and, when the latter made his reports, he did so from these returns and on the faith of their being correct. The treasurer should have specified in them all the money received, and, if he believed any of it belonged to him, should have claimed credit for its retention. His right thereto could then have been passed on by the controller, and, on appeal from his report, if any was taken."

entitled, but are being withheld intentionally or mistakenly under a bona fide claim of right, and whether persons dealing with him as sheriff have been, or are being, required to pay unauthorized fees or charges for his official services. Whether or not the records which defendant objects to opening to the inspection of plaintiff will disclose any such irregularities is wholly beside the point. Defendant resists the controller's demand upon his own claim that they will not, and we have no reason to believe, or expect that they will. The point is that this can be authoritatively determined only by the audit which the controller desires to make; an audit which will either vindicate defendant's financial administration of his office, or reveal facts upon which appropriate and effective action can be taken.

In answer to the allegation of the complaint that defendant has made illegal collections of fees and other charges, that would be revealed by an examination and audit of the records to which access has been refused, defendant contends that it is not the concern of the controller whether illegal collections have been made, and hence that he cannot demand the right to examine the records in question for that purpose. With this contention we cannot agree. Section 10 of the Act of March 31, 1876, P. L. 13, specifically gives the controller the right to audit "all books, records, papers and accounts" of said officers (including the sheriff) for the purpose of verifying the monthly abstracts of money which he returns as due the county. It naturally follows from the grant of this power, and from the very nature of auditing procedure, that the controller, in order to make a complete audit, must have access to all of the sheriff's financial records. Otherwise, by adopting a particular method of accounting and by refusing access to some of his books, a sheriff could make himself the sole judge of his liability to the city for items appearing only in the withheld accounts. In au-

diting the books of a corporation, an accountant's primary aim is to discover the true financial status of the company, and he would be derelict in his duty, if he did not insist upon examining all the company's financial records. In no other way could careless or fraudulent practices be detected and brought to the attention of the stockholders. The stockholders of a public office are the people, and they are entitled to an equally thorough audit of the accounts of their duly constituted representatives. In addition, section 2 of the Act of 1876 provides that the sheriff shall make an oath to the controller that the monthly transcripts contain a true and correct list of *all* fees received at regular rates, and that he has not received other fees than those authorized by law. There is no merit, therefore, in the contention that it is not the concern of the controller whether a sheriff has been collecting fees which he had no right to demand.

To grant the mandamus prayed for in this case in no way condemns present defendant's conduct of his office, or subjects him to any personal liability, or even inconvenience. Such an audit puts no unreasonable burden upon him. It is plainly in his own as well as the public interest, and ill-advised resistance to it is to be deplored. We have no more reason to believe at this time that the controller's audit will be conducted dishonestly, or that improper use will be made by him of what it reveals, than we have to believe that the sheriff has been wanting in financial integrity in the management of his official affairs. Both officers are equally entitled to the presumption of integrity in the performance of their public duties, and neither is to be condemned in advance.

It was for these reasons that we entered judgment for plaintiff.